King *v.* Robinson.

KING, *in error*, *versus* ROBINSON.

The appointment of a guardian *ad litem* is at the discretion of the Court.

No duty rests upon a plaintiff to ascertain the mental capacity of a defendant and bring it before the Court, in order that a guardian *ad litem* may be appointed.

In a suit in error, a waiver of exceptions, taken to alleged irregularities in the preliminary proceedings, authorizes no inference that the proceedings were correct.

A defendant who becomes *non compos mentis* must, if of full age, appear by attorney and not by guardian.

Therefore, in a suit to recall or reverse a judgment recovered against such a defendant in a civil action, it cannot be alleged as error, that no guardian or guardian *ad litem* had been appointed.

Nothing which contradicts the record can be alleged as error.

WRIT OF ERROR, brought by guardian to recall or reverse a judgment recovered by the defendant in error against the plaintiff in error. The record of that judgment showed that the plaintiff in error appeared by attorneys and pleaded to an issue, upon which a verdict was rendered against him.

The defendant moved that the writ be quashed.

The first two grounds of the motion were founded upon some alleged irregularities in the preliminary proceedings. The third ground was that the record of the original action showed that the then defendant appeared by his attorneys and pleaded to an issue, upon which a verdict was rendered ; and that he is now estopped by that record to assert, that he was *non compos mentis.* The motion was overruled, and the defendant excepted. When the case came up for hearing, the now defendant waived the first two grounds of the motion.

King *v.* Robinson.

The error assigned was, "that said King at the time of the rendition of the said judgment, was *non compos mentis* and incapable to take care of himself; nevertheless no guardian for said King was appointed, and no guardian *ad litem*, and there was no notice of the pendency of said action given to, and there was no appearance by, any such guardian at or prior to the rendition of said judgment."

To this assignment *in nullo est erratum* was pleaded.

*Paine*, for the plaintiff in error.

1. The fact assigned for error is, that the original defendant was *non compos mentis*, and that a guardian had not been appointed and notified, nor any guardian *ad litem* assigned for him. This is not in any direct contradiction of the record, that attorneys appeared and pleaded for him. 2d Ld. Raymond, 1415; Wilson's Rep. 85.

The argument would be equally applicable, and yet manifestly invalid, if urged in a writ of error by a minor or an idiot, to reverse a suit, in which an attorney had appeared for him. The insanity of the principal is a revocation or suspension of the powers given to an attorney. Story on Agency, sect. 481, p. 501.

2. The error assigned is sufficient in law. Its averments are admitted by the plea to be true. The allegation that the then defendant was *non compos* and incapable to take care of himself, includes the fact that he was incompetent to appoint and to instruct an attorney, or to substitute one attorney for another.

It is now settled that a judgment so recovered is voidable, if not void. There was formerly a proverb in England that no person could be allowed to "stultify" or make a fool of himself. Whether the luminary who originated it, did not, by the very act, contradict his own maxim, is hardly to be doubted. But the expression was a mere jargon, of no definite import, and having no application to legal proceedings, more than to other transactions. And yet the sages of English law, in its semi barbarian state, introduced the phrase as a legal dogma. The oracular form and haziness of the words seem to have

allied it to the ancient bench. For a season, it wrought out many cruelties. No idiocy, no degree of insanity could exculpate from the charge of crime or of trespass, or relieve against alleged acts which took the form of contracts. The revolting effect of it instanced in cases, in which it is supposed some *non compos* persons, under age, suffered the cruelty of its application, led to a revision. In itself the phrase had no exactness of meaning. At that period it was thought best to embody it into some legal form. The quaintness of that day demanded the form of a general proposition. Accordingly a formula was bungled up, that " An idiot, in an action brought against him, shall appear in proper person, and he who pleads best for him shall be admitted. Otherwise it is of him who becomes *non compos*, for he shall appear by guardian, if he is within age, and by attorney, if he is of full age."

That rule was introduced in the time of the 3d Edward. 2 Black. Com. 291. Prior to that, it was by guardian and not by attorney, that the insane had pleaded their inability. The maxim that a man should not stultify himself, was a denial that insanity was a defence. When that was adopted, the insane was put upon the same footing with others. His disability could no longer be pleaded. Pleading by guardian then became unsuitable. It would have been absurd. The sane and the insane, being in this respect upon equal footing, all must adopt the same mode of pleading. To admit one to plead by guardian, would be the allowing of him to set up the disability, or in the language of the times to stultify himself. Hence the doctrine that a man could not stultify himself was simply expressed in the words that he " must plead by attorney." So soon as it was allowed that an insane man should set up the disability, that was in itself an abrogation of the rule that he could plead only by attorney. It was not long before that abrogation took place. As a rule of law, it was found too revolting to retain a place even in a system which hung a starving pauper for stealing food to the value of a sixpence.

But will it be argued that the non-stultification rule is not

identical with the rule, denying an insane person to plead by guardian, and that the latter is only a deduction from the former, and that though the former is rescinded, the latter is in force? I have shown it to be otherwise. But suppose the one is an inferecce from the other, can an inference from a principle stand as law, when the principle itself has been condemned and expelled? The rule itself with all its corollaries, inferences and offshoots, long ago became extinct. It was never adopted in this country, and no hand here, however antiquarian, has attempted to raise it from its foreign grave. Its inhumanities should protect us against its adoption here.

The case of *Beverley*, 4 Coke, 126, though adverted to by Comyns and Saunders, has in fact been set aside for ages; that is, just so long as insanity has been allowed as a defence. Such a defence was allowed as early as 1737. *Yates* v. *Boen*, 2 Strange, 1104, on the authority of cases, there cited, which had previously overruled the case of *Beverley*. This is cited with approbation in Buller's N. P. 172. The same principle was decided in *Webster* v. *Woodford*, 2 Day, 90.

The case of *Mitchell* v. *Kingman*, 5 Pick. 431, (see Rand's ed. and notes,) confirms the same doctrine.

Judge Story groups together madmen, infants, lunatics and idiots, and holds them all bound to act by guardian. If contracts, made by an insane person himself, are not binding, will the counsel show how it is that his contracts are binding, when made by his agent or attorney?

Suppose an attorney were, at the commencement of a suit, rightfully appointed, could no circumstances occur in which it would be necessary to exchange him, or to give further instructions from facts newly discovered?

A recent statute requires guardians to be appointed for defendants becoming insane during the suit. It may become necessary to move in arrest, or for a set-off of judgments, or for a new trial. Can these be done by attorney?

It may be asked who is to ascertain the condition of a defendant's mind; and on whom is the risk? I ask in turn who is to do it, when a minor or an idiot is sued? It is upon the

plaintiff. It may be called a hard rule. But the plaintiff has the power; the other party has not. The objection is fully met and obviated by the case of *Seaver* v. *Phelps*, 11 Pick. 304.

In support of the foregoing positions, I cite *Mitchell* v. *Kingman*, 5 Pick. 431, and notes of Rand; *Seaver* v. *Phelps*, 11 Pick. 304; *Thompson* v. *Searl*, 3 Mod. 310; *De Witt* v. *Port*, 11 Johnson, 460; *Arnold & al.* v. *Sanford*, 14 Johnson, 417; *White, adm'r*, v. *Palmer*, 4 Mass. 147; Story on Agency, sec. 481, p. 501; *Peaslee* v. *Robbins*, 3 Metc. 164; *Allen* v. *Billings*, 6 Metc. 415; *Hix* v. *Whittemore*, 4 Metc. 545; 1 Story on Equity, 223, and cases there cited.

*Clifford* and *Porter*, for the defendant in error.

The assignment of error is one which the plaintiff is not permitted to make.

The record shows that he appeared by attorney. The assignment contradicts that record. This is never allowed. 1 Roll. Ab. 758, pl. 8; 1 Strange, 648; 2 Tidd's Pr. 1108; 3 Johns. 433; 5 Com. 541; 1 Arch. Pr. 251; Hare & Wallace's Leading Cases, 561; 2 N. H. 435; 18 Maine, 372.

The assignment does not show that there was insanity prior to the rendition of the judgment. Sanity is always to be presumed till the contrary is shown. It is therefore presumed to have continued till the very moment of rendering the judgment. And even then it was not known to the Court or to the then plaintiff. We may simply remark, in passing, that it was, at that late period, quite impossible that a guardian *ad litem* should have been appointed.

Certain persons appeared in the case as attorneys. If there was any duty upon the court to appoint a guardian *ad litem*, it may be inferred that those persons were appointed. It is not requisite that the appointment should be in writing or of record.

The issue was joined and the verdict rendered prior to the alleged incompetency. Nothing then could have been done by a guardian. Not even a motion in arrest, for no civil suit can be so arrested.

But our reliance is mainly upon the ground that no guardian or guardian *ad litem* was necessary. The principle which we maintain is, that it is by attorney and not by guardian, that an insane person, if of adult years, must appear and plead. *Beverley's case*, 4 Coke, 124; *Dennis* v. *Dennis*, 2 Saund. (2d part by Williams, 333, n. 4,); Story's Pl. by Oliv. 375; *Faulkner* v. *M'Clure*, 18 Johns. 134; 4 Com. Dig. Idiot, D, 7; 1 Chit. Pl. 469; 2 T. R. 390; 6 T. R. 133; 4 T. R. 121; 4 Denio, 262; 19 Wend. 649; 13 Ves. 540; 1 Chit. Gen. Pr. 671, 826; Rev. Stat. ch. 110, sec. 33; ch. 115, sec. 87; Story's Eq. Pl. 3d ed. 73, and 64, n. 2; 2 Inst. 390; 3 Bibb, 11; Jacob's L. D. Idiot and Lunatic, IV. 382. The Stat. 1849, ch. 104, has been adverted to. That statute had not been enacted when this judgment was rendered; and it does not require, but merely authorizes, the appointment of a guardian *ad litem*.

It does not appear that any probate guardian had been appointed. Whatever might have been the rights of such a guardian, or the duty of giving notice to him, need not be considered.

On whom rests the duty and the penalty of watching the mental powers of a defendant, and making a representation of them to the court? No pretence that it can be on the plaintiff in a suit. If the friends of Mr. King had made a representation, a guardian *ad litem* would doubtless have been designated. It could however have been but useless. It is not pretended that the judgment was unjust, or unfairly obtained. If injustice has been done, the case is open to a review.

The strongest case against us is probably that of *Mitchell* v. *Kingman*, 5 Pick. 431, cited by counsel. But that was a case of idiocy. And idiots could never appear, except by guardian.

But the case at bar is decided in *Hathaway* v. *Clark*, 5 Pick. 490.

The statute of Westmoreland authorized all persons to appear and answer, except idiots, infants and married women. The rule laid down in *Beverley's case* was found in that statute. No case, found in any book, is at variance from that

rule. Nor has it been changed or invaded by any statute of the State.

The case of *Hix* v. *Whittemore*, 4 Metc. 545, cited and relied on by counsel, is different from this. The insanity there existed at the commencement of the suit, and there was a default. It is therefore inapplicable here. The conclusion therefore, in view of the whole case, which we respectfully submit to the Court is, that lunatics, of adult years, till under guardianship, have all the rights and duties, as to appearance in court, which pertain to other men.

*Paine*, in reply.

It is urged, on the other side, that we are estopped, because our assignment of error is in conflict with the record. But the thing is not so. We do not contend that there was no appearance by attorney ; but that the principal was incapable to appoint and instruct an attorney.

The gentlemen mistake in treating the case of *Mitchell* v. *Kingman*, 5 Pick. as one of idiocy. It was one of lunacy, and the language and the decision of the case, sweep away the mass of incongruities heaped upon the obsolete and barbarian case of Beverley, which in fact, with all its absurdities, has been made the only basis of the defence. The statute of Westmoreland, like wager of battle, faded centuries ago, before the lights of reason and humanity. If it be in force, and the gentlemen's construction of it be correct, how is it that they admit power in the courts ever to appoint a guardian *ad litem*. It denies too the power of a probate guardian to appear or even to institute or prosecute a suit. Our blessing is, that it rests harmlessly among the things that were of old.

SHEPLEY, C. J. — This writ of error *coram nobis* has been commenced by the guardian of the original defendant to procure the recall or reversal of a judgment rendered in this Court.

A motion was made to quash the writ and proceedings for certain alleged irregularities, which motion was overruled, and exceptions were filed and allowed, which have been waived,

as it is said, to have a decision upon the merits. The exceptions are therefore overruled, but this will authorize no inference, that the proceedings are considered to have been correct.

The error assigned is, "that the said King at the time of the rendition of the said judgment was *non compos mentis*, and incapable of taking care of himself, nevertheless no guardian for said King was appointed, and no guardian *ad litem*, and there was no notice of the pendency of said action given to, and there was no appearance by any such guardian at or prior to the rendition of said judgment."

It may be doubtful, whether it was intended to allege the error to have consisted in the rendition of a judgment against one *non compos mentis*, or in the rendition of it without the appointment of a guardian, or a guardian *ad litem*.

It is not probable that it was intended to allege, that a judgment rendered against one *non compos mentis* must of course be erroneous, for by the common law a judgment may be rendered against such a person founded upon contracts or liabilities, by which he is legally bound. If such were the intention, the position could not be sustained. It would be opposed to the general current of authority.

The cases, which determine how such a person shall appear and plead, as well as cases to be hereafter noticed, show, that judgments at law, and decrees in equity may be properly entered against them, when they are properly represented.

It is not alleged in the assignment of errors that a guardian had been appointed by any competent tribunal before the judgment was rendered; or that he was an idiot or an infant.

Whether the judgment was erroneous must therefore depend upon the question, whether the person alleged to be *non compos mentis* was under such a state of facts properly represented before the court.

In many jurisdictions after an inquisition has been taken, and it has been ascertained, that the person is of unsound mind, and his person and estate have been committed to a

committee or guardian, a suit at law for any practical purpose may not be maintainable. The custody of the persons and estates of idiots and lunatics was given to the crown by statutes, 17 Edw. 2, chap. 10 and 19. A person aggrieved by such an inquisition was entitled by statute, 2 Edw. 6, chap. 8, sect. 6, to traverse it, and if not entitled he might obtain permission of the chancellor to do it, and if successful he might obtain a judgment on a contract or liability assumed during the alleged idiocy or lunacy. *Ex parte, Wragg & Feme,* 5 Ves. 449; *Ex parte, Hall,* 7 Ves. 261. In the matter of *Fitzgerald,* 2 Sch. & Lef. 432. In New York, it has been regarded as a contempt of the court, having by statute the custody of the persons and estates of such persons, to commence and prosecute an action at law against them without permission. *L'Amoureux* v. *Crosby,* 2 Paige, 422; Matter of *Hellen,* 3, Paige, 199.

Where, as in this State, no such obstacle exists, the inquiry is presented, whether the original defendant, being of age and not an idiot, but *non compos mentis,* was properly represented before the court. The record shows, that service was regularly made upon him, and that he appeared by attorneys.

" An idiot in an action brought against him shall appear in proper person, and he, who pleads best for him, shall be admitted, as appears in 33 H. 6, 18, b. Otherwise it is of him, who becomes *non compos mentis,* for he shall appear by guardian, if he is within age, and by attorney, *if he is* of full age," is the rule laid down in *Beverley's Case,* 4 Co. 123. And although one point asserted in that case, that no one shall be permitted to stultify himself, has been denied to be correct, especially in this country, the rule now presented does not appear to have been at any time denied to be a correct one. It has the sanction of the best authorities. 2 Saund. 333, note 4; Com. Dig. Idiot, D. 7.

This court is authorized to appoint a guardian *ad litem,* when a party becomes insane pending the suit. Chap. 115 sect. 86; Act approved on July 19, 1849, chap. 104. And it

may by implication be authorized to do it, when the person was not of sound mind before the suit was commenced. Chap. 110, sect. 33. The Court can have no knowledge of the fact, until it receives it from some proper source; and it is then a matter of discretion to be exercised or not according to its judgment upon the proof presented.

The law does not appear to have imposed it as a duty to be performed by a plaintiff, to ascertain the mental capacity of a defendant and to bring it before the Court for its consideration, that such a guardian may be appointed. It may be prudent in cases of doubt for him to do so, lest his judgment should be liable to be disturbed by a petition for a review, or possibly by a suit in equity.

There being no legal obligation resting upon the Court or upon the plaintiff to ascertain the facts and have such a guardian appointed, its omission cannot be assigned as error.

When one *non compos* has been properly before the Court, " acts done by matter of record, as fines, recoveries, judgments, statutes, recognizances, &c. shall bind as well the idiot as he who becomes *non compos mentis.*" *Beverley's case*, 4 Co. 123; *Mansfield's case*, 12 Co. 124; Fonbl. Eq. B. 1, c. 2, § 2, note k.

Nothing can be assigned for error, which contradicts the record. 2 Saund. 101, 102; Com. Dig. Pleader, 3, B. 16; *Hilbut* v. *Held*, Stra. 684.

When the record of a domestic judgment states, that the defendant appeared by attorney, testimony to prove that the attorney was not duly authorized, cannot be received, for it would contradict the record. If the question be, whether a foreign judgment was rendered by a court having jurisdiction and there be found in the record a statement, that the defendant appeared by attorney, such testimony may be received, for the reason, that there can, properly speaking, be no record made by a court having no jurisdiction. *Anonymous*, Salk. 88; *Stanhope* v. *Firmin*, 3 Bing. N. C. 301; *Hall* v. *Williams*, 6 Pick. 232; *Gleason* v. *Dodd*, 4 Metc. 333; *Aldrich* v. *Kin-*

*ney*, 4 Conn. 380 ; *Starbuck* v. *Murray*, 5 Wend. 148 ; *Reed* v. *Pratt*, 2 Hill, 64.

In the case of *Dennis* v. *Dennis*, 2 Saund. 329, the original defendant appeared by attorney, and by her next friend brought a writ of error to reverse it. The error assigned was, that she was an idiot *a nativitate*, and that she ought to have appeared by her friend, and not by attorney. The defendant in error presented by plea an issue on the fact of her being an idiot *a nativitate*, which was joined and the plaintiff in error was nonsuited, and the judgment was affirmed. This affirmance appears to have been made upon the rule laid down as before stated in Beverley's case.

In the case of *White* v. *Palmer*, 4 Mass. 147, the error assigned was, that the original defendant was *non compos mentis*, and that White and Hall long before the teste of the writ had been legally appointed guardians, and that they had no notice of the suit. The judgment was reversed for that cause, but the case does not decide, that the judgment would not have been legal, if the *non compos* had not been under guardianship.

In the case of *Hathaway* v. *Clark*, 5 Pick. 490, the error assigned was, that the original defendant at the time of the service of the writ and of the rendition of judgment was under guardianship as a person *non compos mentis*. The fact of his being thus under guardianship was traversed, and an issue joined thereon was found for the defendant in error, and the judgment was affirmed. The mere fact, that the defendant was of unsound mind at those times, does not appear to have been considered as constituting any objection to an affirmance of the judgment.

In criminal proceedings, the defence according to the usual course of proceeding is often made by an attorney not assigned by the court, that the accused was insane. The verdict of conviction or acquittal may have been found after a decision upon that ground of defence. It would present an anomaly in judicial proceedings to find it assigned for error, that no guardian *ad litem* or other guardian was appointed to conduct

the defence. In such cases it is true, that the accused must appear in person and answer to the charge. Yet if he be actually insane then, that affords him no advantage for his own protection. His defence is managed by an attorney selected by himself, or by his friends, and it is not known, that this course of proceeding in the administration of criminal law, has occasioned any grievance requiring redress.

In the administration of justice in civil cases there is an intrinsic difficulty in cases of alleged unsoundness of mind, in framing a rule for the protection of such persons before the trial, when they have not by some competent tribunal been adjudged to be of unsound mind. Whether the weakness of mind or decay of intellect is so great as to prevent their being regarded as *compos mentis,* is often a question of great delicacy and difficulty. One, which in many cases, can only be decided properly after a most careful and thorough investigation and examination of testimony. If a court upon affidavits and counter affidavits should decide in such cases not to appoint a guardian *ad litem,* this being a preliminary proceeding would not ordinarily appear of record, and if it were regarded as error for a *non compos* of full age to appear and defend by attorney, he might bring error, assign for error his unsoundness of mind and the omission to appoint a guardian *ad litem* and try before a jury the very question submitted in the first instance to the decision of the court, and have that decision regarded as erroneous and the foundation of a writ of error to reverse the judgment. Not only so, but the same question may have been also submitted to the jury as a ground of defence in the original action and have been decided by them also, and then again be submitted to another jury in a writ of error.

The mere fact, that a party defendant is *non compos mentis* during any of the preliminary proceedings, or when judgment is rendered, constitutes no ground of defence, for both at law and in equity a contract or liability assumed by him while of sound mind, may be enforced against him, when he is of unsound mind. *Yates* v. *Boen,* Stra. 1104; *Kernot* v. *Noo-*

King *v.* Robinson.

*man,* 2 T. R. 390; *Nutt* v. *Verney,* 4 T. R. 121; *Ibbotson* v. *Galway,* 6 T. R. 133; *Steel* v. *Allan,* 2 B. & P. 362 and 437; *Pillop* v. *Sexton,* 3 B. & P. 550; *Baxter* v. *Portsmouth,* 2 C. & P. 178; *Hathaway* v. *Clark,* 5 Pick. 490; *Robertson* v. *Lain,* 19 Wend. 649; *Clark* v. *Dunham,* 4 Denio, 262; *Owen* v. *Davis,* 1 Ves. 82; *Niell* v. *Morley,* 9 Ves. 478; Anonymous, 13 Ves. 590.

Cases have been cited to show, and they do show, that a judgment rendered against an infant will be erroneous, if the record shows, that he appeared by attorney and not by guardian. The inference thence appears to have been drawn, that the rule is the same respecting the appearance of one of full age and of unsound mind. The inference is unauthorized. The rule respecting the appearance of an infant, whether of sound or unsound mind is, that he must appear by guardian. 2 Saund. 96, note 2; Com. Dig. Pleader, 2, c. 2; *Beverley's case.* And one of unsound mind of full age, must appear by attorney.

Nor does it appear to be essential, that the law should be otherwise for the protection and preservation of the rights of persons *non compos mentis.* The defence must be, that he was in that condition, when the contract was made or liability incurred; and the only cause of complaint must be, that he was not in a condition to have a fair trial. If it should be made to appear, that he did not on *that* account have a fair trial and that injustice had been done, the court upon petition might grant a review.

And when a judgment wholly unjust has been obtained against one *non compos mentis,* he may in certain cases obtain relief in equity by a perpetual injunction against the enforcement of that judgment. In the case of *Homer* v. *Marshall,* 5 Mumf. 466, a judgment appears to have been obtained against a monomaniac for slanderous words spoken of one with reference to the subject, concerning which his mind was unsound, and a perpetual injunction was obtained against the enforcement of that judgment.            *Judgment affirmed.*