EMMA F. ATWOOD, Administratrix, *vs.* J. ERASTUS LESTER, *et al.*

PROVIDENCE—JULY 23, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

An insane person may be sued and jurisdiction over him acquired by like process as if he were sane.

A judgment so obtained is not void, but is, doubtless, voidable.

A judgment was obtained against the maker of a promissory note who was of sound mind at the time he made it, but whose counsel at the trial represented him then to be of unsound mind, and asked the court to appoint a guardian *ad litem* for him; it was admitted that the maker had no defence to the action; the court refused the request and instructed the jury to return a verdict for the plaintiff :—

*Held,* that the verdict should not be set aside, as the result would have been the same if a guardian *ad litem* had been appointed.

While it is the better practice to appoint a guardian *ad litem* in all cases where the mental unsoundness of a defendant is set up, yet if he is not prejudiced in any degree by failure of such appointment, a verdict against him should not be set aside on that ground.

In a suit on a promissory note the plaintiff's case is made out by proving the execution of the note and the advancement to the maker of the money represented therein.

It is no defence to such a note that although the plaintiff may have had the legal title, the equitable title to the whole or to a part of the money was in another, and that the loan was made with a fraudulent intent as to such equitable owner.

And this defence is further inapplicable where the plaintiff sues in a representative capacity, as that of administratrix.

The signature of the maker of a promissory note was followed by a guaranty of payment, with waiver of demand and notice, and coupled with an agreement that any future payment on account of principal or interest should not release the guarantors, and this was signed before the note was delivered :—

*Held,* that, as to the payee, the signers of this clause had parted with their distinctive character and rights as guarantors, and were liable as joint makers.

A guaranty is a collateral undertaking to pay a debt or perform some other duty in case of the failure of another person who is in the first instance liable to such payment or performance; but the word may be used in such connection with other words as to constitute an original contract.

In this State a person who places his name on a note payable to another at the time it is given is, as to the payee, a joint and several maker; and this primary liability is not modified by the fact that the payee knew the relation between the maker and such other person to be one of suretyship only.

By their waiver in the agreement on the note above-mentioned, the guarantors, as to the payee, became sureties merely, and were, therefore, properly joined as defendants.

ASSUMPSIT on a promissory note, the facts fully appearing in the opinion. Heard on defendant's petition for a new trial.

TILLINGHAST, J. This is an action of assumpsit and is based on a promissory note which reads as follows:

" PROVIDENCE, R. I., October 10, 1893.

Upon thirty days notice I promise to pay to Emma F. Atwood, Administratrix of the Est. of Henry H. Atwood of Johnston, R. I., the sum of Eight thousand Eight hundred and Sixty-seven dollars with interest at the rate of six per cent for value received, $8867.

J. ERASTUS LESTER."

At the foot of this note, on the same paper and upon the same side of it, appears the following:

" Waiving demand and notice we hereby guarantee the payment of this Note, any future payment on account of either principal or interest not releasing us as Guarantors.

JAMES W. STEVENSON.
MARY J. STEVENSON."

This action is brought against the maker and the said Stevensons jointly, and the declaration consists of counts upon the instrument and of the common counts against the defendant Lester alone, and also against all of the defendants.

The pleas are : (1) The general issue, which is pleaded by all the defendants, and (2) a special plea of fraud by the Stevensons, as follows:

" And for further plea in this behalf, by leave of the court first had and obtained, these defendants, James W. Steven-

son and Mary J. Stevenson, jointly and severally come and defend &c. when &c. and say the plaintiff her action against them ought not to have or maintain because they say that since the making and signing of the said guaranty in the plaintiff's declaration mentioned it has come to the knowledge of these defendants that the note for the payment of which such guaranty · was given by these defendants was given and the money pretended to be secured by said note and guaranty was paid by the plaintiff in the furtherance of and as part of an illegal and fraudulent design and purpose, on the part of said plaintiff with respect to the money so paid and so pretendedly secured by said note and guaranty, whereby by reason of such false, fraudulent and illegal design and purpose on the part of the plaintiff these defendants said James W. Stevenson and Mary J. Stevenson were released and discharged from all liability to her, said plaintiff, by reason of their signing such pretended guaranty on said note in the plaintiff's declaration mentioned.   And this they are ready to verify.   Wherefore they pray judgment, &c."

At the trial of the case in the Common Pleas Division, the jury, under instructions from the court that the plaintiff was entitled to recover, render their verdict for the plaintiff, against all of the defendants, for the sum of $9,844.36.

The defendants now move for a new trial on the grounds: (1) That the court erred in not appointing a guardian *ad litem* for the defendant Lester, who was represented to be under mental disability; (2) That the court erred in its rulings in excluding certain testimony; (3) That the court erred in instructing the jury that the plaintiff was entitled to a verdict against all of the defendants; and (4) That the verdict against the Stevensons was against the evidence.

First, then, as to the question regarding the mental disability of the defendant Lester.   The record shows that, previous to the opening of the case, Mr. Almy, on behalf of the defendant Lester, moved that a guardian *ad litem* be appointed for him upon the strength of an affidavit of Mr. Lester's physician, which was produced, to the effect that the mental condition of Mr. Lester was such as to make him

unfit to appear in court, that his testimony would be value-
less, and that he was mentally incompetent to care for his
interests in any litigation to which he was a party.    Upon
the presentation of said affidavit the court inquired if there
was any defence, and the counsel replied that Mr. Lester had
no defence.    Thereupon the motion for the appointment of a
guardian *ad litem* was overruled and the trial allowed to
proceed.    The ruling was duly excepted to by Mr. Almy.
The plaintiff's contention is that, even conceding that Mr.
Lester was a lunatic, a judgment against him is neither void
nor voidable, and hence that the verdict should not be set
aside on account of said ruling.

That an insane person may be sued and jurisdiction over
him acquired, by the like process as if he were sane, is
abundantly established by the authorities.    1 Freem. Judg.
§ 152; 1 Black Judg. § 205; *Johnson, guardian,* v. *Pome-
roy,* 31 Ohio St. 247; *Stigers* v. *Brent,* 50 Md. 214; *King*
v. *Robinson,* 33 Me. 114.    And this being so, a judgment
obtained against him is not void; but, according to the pre-
vailing doctrine, it is doubtless voidable.    *Lamprey* v. *Nudd,*
29 N. H. 299; Black Judg. § 205.    The verdict in this case,
then, being only voidable, should it be set aside simply on
the ground of the defendant's mental unsoundness at the
time it was rendered; for it is not contended that defendant
was mentally incompetent or of unsound mind at the time he
gave the note and received the money ?   We think not.    It is
admitted by his counsel that he has no defence to the action
on its merits.    The defendant received the amount repre-
sented by the note, and had the use and benefit thereof, and
he is, therefore, justly indebted to the plaintiff therefor.    If
a guardian *ad litem* had been appointed he could have inter-
posed no defence to the suit, and the verdict would have
been the same as that rendered.    While, therefore, we think
that in all cases where the mental unsoundness or insanity
of a defendant is set up, although not formally adjudicated,
it would be better practice for the court to appoint a guardian
*ad litem,* yet as the defendant in the case at bar has not been
prejudiced in any degree by the failure of the court to ap-

point one, we do not think the verdict should be set aside on that ground.

The rulings complained of in connection with the rejection of the testimony relate to a single question, and hence may properly be considered together.

Defendants' counsel offered to show that the money which plaintiff loaned to Lester was taken by her from the Providence Institution for Savings, where it was safe, and placed in the hands of Lester for the purpose of .defrauding the plaintiff's son out of said money, the latter being the equitable owner of a part thereof. Perhaps the question raised may be more intelligently presented by referring to the remarks of the court and counsel in the premises. By Mr. Almy: "Evidence is offered showing, or tending to show, that the note and guaranty in the suit were made in pursuance of a fraudulent attempt to conceal money belonging to other parties—not belonging to this suit—and that they were ignorant of such intent." The Court: "I understood your questions were, Mr. Almy, to show that there were certain moneys in the bank which you claim were properly in the hands of this plaintiff, which she devoted to the use which she did, which was an improper use, as you claim. You claim that that is fraud. Is that as far as you go?" Mr. Wilcox: "We go a little farther and claim that there was a design to cover it up so that the beneficiary could not find it." The court ruled that the testimony was inadmissible, and the defendants duly excepted. In support of defendants' contention that the ruling was erroneous, they rely on the familiar doctrine that "whenever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct." Stated more briefly, the contention is that an agreement to do an unlawful act cannot be supported at law—that no right of action can spring out of an illegal contract. See Broom Leg. Max. 4 ed. (573). We are not disposed to take issue with such a wise and salutary rule, founded, as it is, in honesty and good morals. Indeed, this

court has repeatedly both recognized and adopted it. See *Whelden* v. *Chappel*, 8 R. I. 230; *Smith* v. *Rollins*, 11 R. I. 464; *Chaffee* v. *Sprague Mfg. Co.*, 14 R. I. 168; *Colwell* v. *Armstrong*, 14 R. I. 178; *Sullivan* v. *Horgan*, 17 R. I. 109. But it is not applicable to the case before us for two reasons, viz.: first, because the plaintiff could make out her case without proving, or opening to the defendants to prove, a fraud in which both parties participated. *Chaffee* v. *Sprague Mfg. Co.*, *supra*. The plaintiff's case was made out by proving the execution of the note and the advancement to Lester of the money represented therein. The question asked by defendants' counsel of plaintiff's daughter, in cross-examination, as to whether her mother had in her possession any money which belonged to witness's brother, was not in cross-examination of anything plaintiff had gone into, it had nothing to do with the contract sued on, and, therefore, was rightly ruled out. It was no concern of the defendants where the plaintiff got the money, or whether she held it as trustee or otherwise, and hence the question was wholly irrelevant. The only question at issue was whether plaintiff had loaned said sum to the defendant Lester on the note in suit; and there being no dispute that such was the fact, the plaintiff's case was made out, provided the defendants were properly joined in the action, which we will consider later.

The second reason why the rule above invoked is not applicable is that the action is brought by the plaintiff in her representative character as administratrix. The law applicable to a case of this sort is very clearly and forcibly stated in *Wetmore, Ex'r*, v. *Porter*, 92 N. Y. 76, where it was held that it is no defence to an action brought by an executor, as such, to recover assets of the estate in the hands of defendant, that plaintiff in his individual capacity acted in collusion with the defendant in despoiling the estate. In that case the declaration alleged that plaintiff, at the request of the defendant, removed the bonds in question from the Safe Deposit Co., where the securities of the estate were deposited for safe keeping, and also, at defendant's request, left them at the Shoe & Leather Bank in New York as security for

loans made, and to be made, of said bank by the firm of Porter and Wetmore, to carry on the partnership business, and that the bonds were ordered by defendant to be sold by said bank and the proceeds applied to pay a firm note then held by the bank.   In overruling the decision of the court below, which was that, inasmuch as the plaintiff, in his individual capacity, was in collusion with the defendant in despoiling the estate, he could not in his representative capacity reclaim said bonds from one who had wrongfully come into possession thereof, and restore them to the trust estate, Ruger, C. J., said :   "We think it (the court) proceeded upon a mistaken view of the rights and duties of the parties. The legal title to these bonds, and the right to their custody, was and remains in the trustee, at least until they reach the possession of some person who has paid full value, and is ignorant of their trust character.   Whoever receives property knowing that it is the subject of a trust, and has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the *cestui que trust,* but also of the trustee to reclaim possession of the specific property, or to recover damages for its conversion in case it has been converted."   .   .   .   .   .   .   .   .   .   .

"It is an alarming proposition to urge against the legal title which a trustee has to trust funds that his recovery of their possession may be defeated by a wrong-doer, upon the allegation that the lawful guardian of the funds colluded with him in obtaining their possession.   This action is sought to be maintained by the plaintiff solely in his representative capacity as executor or trustee under the will of Alpheus Fobes."

"The contracts and engagements entered into by him in his individual capacity are extraneous to the power conferred upon him by the will of Alpheus Fobes, and cannot be made the foundation of a defense to such an action.   The dual character maintained by an individual who is also engaged in the administration of a trust involving the control and custody of another's property is not only recognized by numerous decisions in the courts, but has also been the subject of frequent statutory enactments."   .   .   .   .   .

"The twin maxims '*Ex dolo malo non oritur actio*' and '*Ex turpi contractu actio non oritur*,' have no application to the cause of action set up in the complaint. It is not founded upon and does not grow out of the illegal or unauthorized dealings between the plaintiff and defendant, but such dealings are invoked by one of the wrong-doers to defeat a party who is asserting a legal right and who in this action appears in a representative character alone. We see no reason why a trustee who has been guilty even of an intentional fault is not entitled to his *locus penitentiæ* and an opportunity to repair the wrong which he may have committed." See also *Lee* v. *Horton*, 104 N. Y. 538 ; *Place* v. *Hayward*, 117 N. Y. 487 (495); *Wilson* v. *Trust Co.*, 44 S. W. (Ky.) 121.

The case of *Niver* v. *Best*, 10 Barb. 369, cited by defendants' counsel, is not in point. That was a case where property was mortgaged for the express purpose of defrauding creditors, the mortgagor entering into a written agreement with the mortgagee showing that such was the purpose. About three years afterwards—the property having in the meantime been sold by the mortgagor and a settlement effected between mortgagor and mortgagee—a note was given by the latter to the former for the balance found due, growing out of the transactions between them, and the fraudulent mortgage aforesaid was then given up. More than two years after the note was made it was transferred to the plaintiff, who brought suit thereon. The note was payable on demand at the maker's house. The court held that after so great a lapse of time the plaintiff was bound to consider it, when he took it, as overdue and dishonored paper, and subject to any defence that existed between the original parties. Had the payee of the note sued the maker, the defence of fraud would of course have been open to the latter, as no action by the payee will lie on a note given to secure the payment of the consideration money for property mortgaged or sold for the purpose of defrauding creditors, it being a general rule of law that no court will aid a party to an illegal contract, which is executory only, to recover

thereon. *Frost* v. *Gage*, 3 Allen, 560, cited by defendants' counsel, illustrates and enforces the same general doctrine.

*Moss* v. *Cohen*, 11 Misc. Rep. N. Y. (11 Deleh.) 184, is to the effect that a bond to indemnify executors against the consequences of a contemplated *devastavit* by them of trust funds is void *ab initio*, as against public policy, and that an action to enforce the same cannot be maintained. The case is clearly distinguishable from the case at bar, however, in that the plaintiff there was not suing in a representative capacity. In delivering the opinion of the court, Bischoff, J., distinguished the case from *Wetmore* v. *Porter*, *supra* on that ground.

The late case of *Electric Light Co. et al.* v. *Veal*, 145 Ind. 506, cited by defendants' counsel, not only does not militate against the plaintiff's case, but in effect tends to sustain it. There the appellee (Veal) sought to recover on two mortgage notes given by the appellant company as principal, and the directors of said company as sureties. At the time the loan was made Veal was county treasurer, and the money for which the notes were given was taken from the funds of said treasurer and illegally loaned to said company, in violation of the penal statutes of the State, which made such an act a felony. The court held that the appellee, having violated an express statute in loaning the money in his hands as county treasurer, could not maintain the action, it being based on his own illegal act. Counsel for appellee contended that in such a case as that, public policy required that, notwithstanding the violation of the statute, the contract based upon such violation should, nevertheless, not be declared void, citing *Lester* v. *Howard Bank*, 3 Am. Rep. 211 ; *Deming* v. *State*, 23 Ind. 416 ; *State* v. *Levi*, 99 Ind. 77, and other authorities in support of said contention. But the court said : "In these cases, however, other interests than those of the parties to the contracts were concerned ; and it was to protect such other interests, and not for the benefit of those who had violated the law, that the contracts were enforced." Referring to the cases relied on by the appellee, the court said : "These cases are not analogous to the case at bar. Here

the action was not brought in the name of the county, nor did the appellee pretend to sue in his capacity as county treasurer. . . . . . . Neither is there anything in the record from which it can be known that the county was pursuing the funds belonging to its treasury or seeking to recover them from the appellants. No public interest in the result of this action is therefore shown, nor any reason why public policy would be served by a recovery on the contract sued on, in favor of the appellee."

*Sullivan* v. *Horgan, supra,* which is much relied on by defendants' counsel, belongs to the same general class of cases as those previously cited by them and already considered. There the plaintiff was acting solely in his individual capacity in the making of the illegal contract, which was the basis of his action, and the court held that, both parties being *in pari delicto,* the law would not aid either, but would leave them where it found them.

It will thus be seen that the cases make a distinction between a case where the fraud is committed by the plaintiff in connection with his personal affairs and one where it is committed by him when acting in a representative capacity. And we think there is good reason for such a distinction. Where a person is acting solely on his own behalf he ought to be precluded from invoking the aid of the law to enable him to enforce a contract made in fraud of the rights of a third party, even though the person against whom the action is brought has had the benefit of such contract. It serves him right to leave him helpless and remediless. But the case is very different where the plaintiff is acting in a representative capacity, and is handling the funds of an innocent beneficiary. In such a case the law permits him to undo the wrong, as far as may be, by restoring said fund to its proper place; not, however, for his own sake, but solely out of regard to the rights of the innocent beneficiary.

The third ground for a new trial raises the question as to whether the court erred in instructing the jury that the plaintiff was entitled to recover against all three of the defendants in the action. The answer to this question depends

upon the effect to be given to the writing on said note signed by the Stevensons. If, as learnedly argued by defendants' counsel, it is simply a guaranty, then the liability assumed by the Stevensons was not primary, but secondary, and they were improperly joined in the action. But if, on the other hand, the writing had the effect to make them sureties, or joint makers of the note, then they were properly joined as defendants, and the ruling of the court was correct. We think that, under the law as heretofore administered in this State, the latter rule must prevail. The agreement of the Stevensons was placed upon the note before its delivery, and the evidence shows that in advancing the money the plaintiff relied on the security which was given to the note by their signatures. It is true they style themselves guarantors; but by waiving demand and notice, and by agreeing that any future payment on account of either principal or interest shall not release them from liability, we think that, as to the payee of the note, they practically strip themselves of their distinctive character and rights as guarantors, and become liable as joint makers. Of course there is no dispute as to the primary meaning of *guaranty.* It is a collateral undertaking to pay a debt or perform some other duty in case of the failure of another person, who is in the first instance liable to such payment or performance. 9 Am. & Eng. Ency. L. 67; *Sturges* v. *Bank,* 11 Ohio St. 168; *Gallagher* v. *Nichols,* 60 N. Y. 444; Sto. Pr. Notes, 7 ed. § 457. But, while this is the primary meaning, it is clear that the word may be used in such a connection with other words as to constitute an original contract or undertaking—*Dole* v. *Young,* 24 Pick. 252; Sto. Pr. Notes, § 461—and we think it was so used in the writing in question. The policy of the law of this State, as settled by repeated decisions, is that a person who places his name on a note payable to another, at the time it is given, is, as to the payee, a joint and several maker. *Perkins* v. *Barstow,* 6 R. I. 505; *Bank* v. *Follett,* 11 R. I. 92. And, further, that the primary liability thus assumed is not modified by the fact that the payee knew the relation between the maker and such other person to be one of surety-

ship merely.  *Carpenter* v. *McLaughlin,* 12 R. I. 270.   We are aware that, in thus holding, the court is out of harmony with the courts of many, and, perhaps, a majority, of the other States.   And while we may regret that a person who signs a note with the belief that he is not to be called upon to pay the same until after the holder has exhausted his remedies against the maker should be held primarily liable thereon, yet the law in this State has become so firmly settled that such a person is a joint promissor, and hence primarily liable, that no change can properly be made therein except by the General Assembly.   And in this connection we may add that it is greatly to be desired that the popular movement now on foot to secure uniform legislation on the subject of commercial paper may be speedily successful.   For while no subject is more closely allied with the business interests of the whole country, yet there is probably no one upon which a greater diversity of judicial decisions is to be found.

Finally, as to the effect of the agreement on the note in question, we fail to see that it can be distinguished, upon principle, from that on the note in *Bank* v. *Irons,* 18 R. I. 718, where, after much consideration, it was held that by reason of the waiver, which was very similar to the one on the note in suit, the guarantors stood on the footing of sureties merely, as to the payee, and hence that they were properly joined as defendants.   The discussion of the question in that case, which was twice elaborately argued by able counsel (see 19 R. I. 484), is so recent and so pertinent that further consideration thereof is rendered unnecessary.

The fourth and last ground of the petition for new trial, viz., that the verdict was against the evidence, requires no separate consideration.

Petition for new trial denied and dismissed, and case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

*Stephen A. Cooke and Louis L. Angell,* for plaintiff.
*Herbert Almy and Elmer A. Wilcox,* for defendants.