MERCEDES TERESA SUBIRANA Y LAGUNA, Plaintiff and Appellant, v. JUAN ENRIQUE CORTADA Y TORO, Defendant and Appellee.

No. 4376. Argued April 10, 1928.—Decided May 11, 1928.

Lopez de Tord & Zayas Pizarro for the appellant. José E. Figueras for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

On November 17, 1927, María Teresa Subirana filed a verified complaint in an action for divorce in the District Court of Ponce on the ground of cruel treatment and grave injury on the part of her husband, Juan Enrique Cortada, alleging that both she and the defendant had always had their residence in Porto Rico, first in the municipality of Santa Isabel and later in the city of San Juan; that the defendant is of age, a property owner and resident of San Juan, Porto Rico, living temporarily in the city of New York. One of the alleged grounds for the divorce is that about the year 1924 in the city of San Juan in the presence of several persons, among whom were friends and relatives of the plaintiff and of the defendant, the latter insulted the plaintiff publicly by calling her vile names indicating infidelity on the part of the plaintiff and accusing her of accepting the attentions of men.

The marshal of the district court returned to the clerk the summons given to him to be served on the defendant endorsed "not found" because the defendant was not residing in Ponce or in Porto Rico, but in the United States of America, according to his information and belief. On the following day the plaintiff filed a verified motion in the court alleging that she had a good cause of action; that the defendant had been absent from Porto Rico since the date of filing the complaint, and that she did not know exactly where the defendant lived in New York, but that he received his mail in care of his father, Juan Cortada, whose address she gave, wherefore she moved that the summons be served by publication and by mail to that address. The district court ordered that the summons be published at least once a week for a period of forty days in the Ponce newspaper *El Día* and that a copy of the complaint and a copy of the summons be sent by registered mail in care of Juan Cortada at the address indicated in the city of New York. The summons was published in that newspaper on December 16, 23 and 30, 1926,

and January 5, 13 and 27, 1927, in compliance with the order, and on March 29, 1927, the clerk noted the default of the defendant, stating that he had been summoned by publication and that there had been sent by registered mail to the address of the defendant in New York copies of the complaint and of the summons in accordance with the order of the court.

Prior to the entry of default the plaintiff filed a verified motion in the court requesting that the deposition of her father, Tomás Subirana, be taken and alleging, among other things, that he was familiar with important facts in the case and especially with that referring to the residence of the plaintiff and of the defendant in Porto Rico. The court took that deposition, but after the entry of default the plaintiff moved that the deposition be taken again by the court, because she was in doubt about whether it was proper to take it before the entry of the default of the defendant, and also that the deposition of the plaintiff be taken because she was on the point of leaving the island. The court took both depositions during which some letters were presented. The two depositions of Tomás Subirana are substantially the same and of what is now necessary those depositions show the following: María Teresa Subirana deposed on March 9, 1927, that the plaintiff married the defendant on September 9, 1920, in New York where her family resided, coming later to live at Central Cortada in the town of Santa Isabel where she fixed her residence with her husband and where they lived for four years; that her husband was stockholder and manager of Central Cortada; that when the central was sold in 1924 they moved to San Juan where they fixed their residence, going later to New York for nine or ten months and living there with the father of the deponent and then returned to Porto Rico; that the defendant was going to represent in Porto Rico the father of the plaintiff and other different business houses; that during that interval of time they were in Porto Rico and she returned again to New York; that her last domicile in Porto Rico was in San Juan which she left in

1924, but not permanently, as they did not break up their home, and that on their return the defendant became ill in 1925 and since then he has been in a sanatorium, his mental derangement being caused by syphilis as shown from an analysis of his blood; that when the plaintiff and the defendant went to New York they had no intention of abandoning Porto Rico, but intended to return and live here permanently; that whenever she has gone to New York she has always lived in her father's house, and that during Christmas holidays of 1923–24 she was illtreated by her husband in the Condado Hotel of San Juan.

It appears from the deposition of Tomás Subirana that he is a resident of New York where he has his business; that the plaintiff and the defendant have never had their residence in New York and when visiting that city they lived in the house of the deponent; that Juan Enrique Cortada was the manager of Santa Isabel Sugar Company until March or April, 1924, and on leaving that position he was going to engage in the commission business with his residence in San Juan or in Ponce, but with his principal office in the former city; that in June, 1925, the deponent came personally with Juan Enrique Cortada to organize that business; then Cortada fell ill and had to be confined for two days in the lunatic asylum of San Juan by order of the doctors who told him that the defendant was irresponsible and had violent fits, he being taken later to New York; that he recognized several letters referring to the business which the defendant was going to establish in Porto Rico; that the plaintiff has been separated from her husband since June, 1925, and since then he has had to furnish his daughter and her children with the necessaries of life because her husband does not contribute a cent to their support; that since 1925 the defendant has become insane and has been confined since then in a sanatorium in New York as a consequence of mental derangement.

At the conclusion of that deposition the attorney for the plaintiff said that he would move for the appointment of

counsel for the defendant in this case and presented a certificate signed and sworn to by a New York doctor on November 30, 1926, to the effect that Juan Enrique Cortada had been confined in a sanatorium of that city since July, 1925, suffering from "phyclosis of a manic depressive variety" and mentally incapacitated.

After this the plaintiff moved that the court appoint counsel to represent the defendant in the suit, alleging that the defendant had been summoned by publication while absent from Porto Rico; that his default had been entered, and that it was a positive fact known to the plaintiff and appearing from the record, according to the depositions given and the documentary evidence admitted by the court, that Juan Enrique Cortada was confined in a lunatic asylum in New York suffering from mental derangement and therefore could not defend his rights personally. The court decided that motion by an order dismissing the complaint which was entered as a judgment, as was done with the following pronouncements: First, that the summons of the defendant was defective; second, neither the plaintiff nor the defendant resided in Porto Rico during the year preceding the filing of the complaint by the plaintiff; third, that the court had not acquired jurisdiction over the defendant; fourth, that as it appears from the evidence that the defendant is insane, or presumed to be insane, his incapacity should be determined first and a guardian and not an attorney should be appointed to represent him. The present appeal was taken by the plaintiff from that judgment.

There is no doubt that an insane person can be sued, although the action may be for divorce based on acts committed prior to his insanity, as has been held in *Harrigan* v. *Harrigan*, 135 Cal. 397, 67 Pac. 506; *Iago* v. *Iago*, 168 Ill. 339; *State* v. *Murphy*, 29 Nev. 149; *Rathbun* v. *Rathbun*, 40 How. Pr. 328, and *Stratford* v. *Stratford*, 92 N. C. 297, cited in 130 Amer. St. Rep. 851. As said by Bishop on Marriage, Divorce and Separation, vol. 4, p. 230, a denial of

the justice of the law to a sane person by reason of the insanity of another would amount to throwing over the former what God imposed on the latter.

As it appears from the record, the depositions taken and the documents exhibited that the plaintiff moved the lower court for the appointment of counsel for the defendant in this action, we are of the opinion that the lower court was authorized to examine those acts in order to rule on the motion and that this court is also.

It is provided in the second paragraph of section 165 of the Civil Code that no person can secure a divorce under that Code who has not resided in the island for one full year next immediately preceding the action, unless the act on which the suit is based has been committed in Porto Rico, or while one of the parties to the marriage resided here.

As it is alleged in the complaint that the spouses always had their residence and domicile in Porto Rico, first in Santa Isabel and later in San Juan, a fact which does not appear to be contradicted, but rather corroborated, by the depositions, for they show that during their temporary absence the spouses kept their home in San Juan and that during their temporary residence in New York they stayed at the house of the plaintiff's father, it is evident that the Porto Rican courts have jurisdiction of the action, and also because the plaintiff alleged that the cause for the action occurred in Porto Rico while they resided here, referring to what occurred at Christmas of 1923. And as the action for divorce is a personal action, although section 81 of the Code of Civil Procedure prescribes that the action must be tried in the district in which the defendant resides, yet the complaint could have been filed in the District Court of Ponce under section 77 of that Code by the submission of the plaintiff, although that was not the place of residence of her husband, without prejudice to the defendant's moving for a change of venue to his district. The domicile of the defendant and his wife was San Juan when he became insane in this city and therefore his

domicile continued to be in San Juan notwithstanding the fact that since July, 1925, he was in a sanatorium in New York.

The defendant could not be summoned personally in Porto Rico because he was absent, and although the action brought against him is a personal one, he could be summoned by publication because it was an action for divorce, as held by the United States Supreme Court in *Pennoyer* v. *Neff*, 95 U. S. 714, which applies to the present case in this particular, for although it was held that in personal actions the courts do not acquire jurisdiction over absent persons summoned by publications, there is an exception to that rule when the case involves the civil status of persons, the court saying:

"To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without redress."

We applied this exception to the rule in the case of *Orama et al.* v. *Oyanguren,* 19 P.R.R. 788, an action of filiation. The case of *Huete* v. *Teillard,* 17 P.R.R. 52, cited by the court

below, has no application to the present case because that was a personal action of debt.

Under our statutes there are only two ways in which the courts can acquire jurisdiction over a defendant, by personal summons or by constructive service when proper, as is the case here. Therefore, as the defendant was summoned by publication, the court acquired jurisdiction for subsequent proceedings and there only remains the manner of securing the appearance of the defendant who is insane. There is no application to cases like this of subdivision 4 of section 93 of the Code of Civil Procedure providing that service of summons on a person residing within this Island who has been judicially declared to be of unsound mind, or incapable of conducting his own affairs, and for whom a guardian has been appointed, shall be made by delivering a copy thereof to such person and also to his guardian, because that provision has reference to cases in which service of summons is made personally and not by publication, apart from the presumption that there had been a previous judicial declaration of insanity or incapacity and the appointment of a guardian. Our statutes contain nothing with respect to summoning an insane defendant who is absent from Porto Rico and therefore he should be summoned in the same manner as any other absent defendant. 32 C. J. p. 783, par. 628. As said in 130 Amer. St. Rep. 845, jurisdiction may be obtained ordinarily over an insane person by the like process as if he were sane, according to the cases therein cited, unless the statutes provide a certain manner of summoning an insane person. In *McAllister* v. *Lancaster Co. Bank,* 15 Neb. 295, 18 N. W. 57, the record showed that the insanity of the defendant was known to the plaintiff when he commenced his action, and the court refused to set aside the judgment against him, holding that by its process the court acquired jurisdiction and that although the want of an answer by a guardian for the appellee may have rendered the judgment erroneous, it is neither void nor voidable. In *Atwood* v. *Lester,* 20 R. I. 660, 40 Atl. 866,

it was said that an insane person may be sued and jurisdiction over him acquired by the like process as if he were sane, is abundantly established by the authorities. 1 Freeman on Judgments, sec. 152; 1 Black on Judgments, sec. 205; *Johnson* v. *Pomeroy,* 31 Ohio St. 247; *Stidgers* v. *Brent,* 50 Md. 214; 33 Amer. Rep. 317; *King* v. *Robinson,* 33 Me. 114, 54 Am. Dec. 614. It is the policy of legislators and of the courts to give full protection to the rights and interests of insane litigants, and in the absence of a statute regulating such power it is their duty to determine the manner of exercising it for that purpose, with authority for that purpose to appoint a person to represent the insane person when jurisdiction to hear and determine the matter has been acquired, whether the insane litigant is a resident or not and although he may not have been judicially declared insane and no guardian had been appointed to represent him. The statutes giving to probate courts jurisdiction over the person and property of an insane person do not limit the powers of the courts in which an action is brought to appoint a guardian *ad litem* to represent the insane person and appear for him. 32 C. J. pages 772 and 773.

Sections 250 and 256 of our Civil Code make provision for the declaration of insanity of a person and the appointment of a guardian, which appointment may be requested by the husband or wife, by relatives with the right to succeed him in case he dies intestate and by the public attorney where such persons are minors or lack the status enabling them to appear in a suit, when none of those persons are living or if they fail to make use of the right granted them, and when the person is a raving maniac. But a person having to litigate with an insane person is not granted the right to apply for a declaration of insanity and the appointment of a guardian; and although in this case the plaintiff, being the wife of the defendant, might apply for that appointment, the question should be considered for any litigant and not for this particular case. Consequently, as the litigants have not

the right to make that request, they can not become bound to have the incapacity of the person whom they are going to sue previously declared and to wait for the result of that declaration, which may be controverted in an ordinary trial. This is why it is provided in section 56 of the Code of Civil Procedure that when an insane or incompetent person is a party, he must appear by his general guardian or by a guardian *ad litem* appointed by the court in which the action is pending, in each case, or by a judge thereof, and that a guardian *ad litem* may be appointed in any case when it is deemed expedient by the court in which the action or proceeding is pending or by a judge thereof, to represent such person, notwithstanding he may have a general guardian and may have appeared by him. According to subdivision 3 of section 57 of that Code, the appointment may be requested by the other party to the action. This application must be made before entering into the trial of the case, although it may be made during the trial by motion, if the defendant is not prejudiced thereby. It may be made in the name of the insane defendant within the time allowed for appearance and defense, and after that time by plaintiff. 32 C. J. p. 773, par. 593.

The citations made by the lower court of section 230 of the Code of Civil Procedure in connection with section 77 of the Law of Special Proceedings, as well as of the Act of March 14, 1907, as amended in 1913, have no application here, for the first refers to the appointment of counsel for minors whose interests are opposed to those of their father or mother, and the second to the proceeding for the confinement in insane asylums of dangerous lunatics.

The lower court said something in its opinion in support of the judgment appealed from in regard to the merits of the cause of action, making reference to the condonation thereof; but as there was no trial in the present case and that question was not submitted for its decision, but only

the appointment of counsel for the insane person, we shall not consider that question.

In view of the foregoing and inasmuch as the lower court acquired jurisdiction over the defendant by the summons by publication; that the court has had its attention called to the insanity of the defendant, and that his insanity appears to be proved by the two depositions and by the affidavit of the doctor of the sanatorium, the appointment of counsel for the defendant should be made and for that purpose the judgment appealed from is reversed.