Mercedes Teresa Subirana y Laguna, demandante y apelante, *v.* Juan Enrique Cortada y Toro, demandado y apelado.

No. 4376.—*Visto:* Abril 10, 1928. *Resuelto:* Mayo 11, 1928.

*López de Tord & Zayas Pizarro,* abogados de la apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

María Teresa Subirana presentó demanda jurada de divorcio en la Corte de Distrito de Ponce el 17 de noviembre de 1927 fundada en trato cruel e injurias graves de su esposo Juan Enrique Cortada, diciendo en ella que siempre ha tenido su residencia al igual que el demandado en la isla de

Puerto Rico, primero en el municipio de Santa Isabel y luego en la ciudad de San Juan, y que el demandado es mayor de edad, propietario y vecino de San Juan, Puerto Rico, con residencia temporal en la ciudad de Nueva York, siendo uno de los hechos alegados para el divorcio que allá por el año 1924 y en la ciudad de San Juan, estando presentes varias personas, entre ellas amigos y familiares de la demandante y el demandado, éste insultó públicamente a la demandante diciéndole coqueta, sin vergüenza y otras palabras que indican infidelidad por parte de la demandante, acusándola el demandado de aceptar atenciones de los hombres.

El márshal de la corte de distrito devolvió al secretario la cédula que le entregó para la citación y emplazamiento del demandado sin cumplimentarla por no residir el demandado en Ponce ni en esta isla y sí en los Estados Unidos de América, según su información y creencia. Al día siguiente la demandante presentó moción jurada a la corte alegando tener una buena causa de acción, que el demandado desde la fecha de la radicación de la demanda se encontraba fuera de esta isla y que desconoce el sitio exacto donde reside el demandado en la ciudad de Nueva York pero que recibe la correspondencia al cuidado de su padre don Juan Cortada, cuya dirección expresó, por lo que solicitó que la citación y emplazamiento se hiciera por edictos y por correo a la dirección indicada. La corte de distrito ordenó la citación del demandado por edictos publicados en el periódico "El Día" de Ponce por término de cuarenta días y por lo menos una vez por semana y que por correo y bajo sobre certificado se enviase copia de la demanda y del emplazamiento al cuidado de don Juan Cortada a la dirección indicada de la ciudad de Nueva York. Los edictos fueron publicados en dicho periódico los días 16, 23 y 30 de diciembre de 1926 y 5, 13 y 27 de enero de 1927, conforme a dicha orden, y el 29 de marzo de 1927 el secretario anotó la rebeldía del demandado, haciendo constar su citación por edictos y que se

remitió por correo bajo sobre certificado a la dirección del demandado en Nueva York y copia de la demanda y emplazamiento en este caso, de acuerdo con la orden del tribunal.

Antes de esa anotación de rebeldía la demandante presentó moción jurada a la corte solicitando que tomase deposición a su padre don Tomás Subirana, alegando entre otras cosas que está relacionado y familiarizado con hechos importantes de este caso y especialmente en lo que se refiere a la residencia de la demandante y del demandado en Puerto Rico. La corte tomó esa deposición pero después de anotada la rebeldía la demandante solicitó que fuese tomada otra vez por la corte esa deposición por tener dudas sobre si era procedente antes de estar anotada la rebeldía del demandado, y que también se tomase la deposición de la demandante por estar próxima a ausentarse de esta isla; y, en efecto, la corte tomó ambas deposiciones durante las cuales fueron presentadas algunas cartas. Las dos deposiciones prestadas por don Tomás Subirana son sustancialmente iguales y de lo necesario ahora de esas deposiciones resulta lo siguiente: depuso doña María Teresa Subirana el 9 de marzo de 1927 que la demandante casó con el demandado en 9 de septiembre de 1920 en Nueva York, donde residía su familia, viniendo luego a residir en la Central Cortada en el pueblo de Santa Isabel, donde fijó su residencia con su esposo y donde vivieron cuatro años: que su marido era administrador de la Central Cortada y accionista de ella: que cuando esa central fué vendida en abril de 1924, se trasladaron a San Juan donde fijaron su domicilio, marchando después a Nueva York por unos nueve o diez meses, hospedándose en la casa del padre de la deponente, de donde regresaron a Puerto Rico: que el demandado iba a representar en Puerto Rico al padre de la demandante y a otras diferentes casas de negocios: que durante ese intervalo de tiempo estuvieron en Puerto Rico y regresó otra vez a Nueva York: que su último domicilio en Puerto Rico fué San Juan, de donde se

marchó el año 1924 pero no definitivamente, pues aquí dejaron puesta su casa y que al regresar el demandado en 1925 se enfermó y actualmente y desde entonces se encuentra en un sanatorio, debiéndose su enfermedad mental a la enfermedad avariosis, o sea, sífilis, según el reconocimiento que se hizo de su sangre: que cuando demandante y demandado fueron a Nueva York no tuvieron intención de abandonar a Puerto Rico sino regresar a él para vivir aquí permanentemente, que siempre que ha ido a dicha ciudad se ha hospedado en la casa de su padre, y que en las Navidades de 1923 a 1924 fué maltratada por su esposo en el Hotel Condado de San Juan.

De la deposición de don Tomás Subirana resulta que es vecino de Nueva York, donde tiene sus negocios: que la demandante y el demandado no han tenido jamás su residencia en Nueva York y cuando ellos iban a esa ciudad se hospedaban en la casa del declarante: que Juan Enrique Cortada era administrador de Santa Isabel Sugar Company hasta marzo o abril de 1924 y que al retirarse de ella se iba a dedicar al negocio de representaciones en Puerto Rico con residencia en San Juan o Ponce pero con oficina principal en la primera de esas ciudades: que en junio de 1925 el deponente vino personalmente con Juan Enrique Cortada para organizar dicho negocio, enfermándose entonces el Sr. Cortada y teniendo que ser recluido dos días en el manicomio de San Juan por orden de los médicos, quienes le manifestaron que el demandado era irresponsable y tenía accesos violentos, siendo después llevado a Nueva York: reconoció varias cartas referentes al negocio que el demandado iba a establecer en Puerto Rico: que la demandante está separada de su esposo desde junio de 1925 desde cuya fecha le ha tenido que suministrar a su hija y a los hijos de ésta todo lo necesario porque su marido no contribuye para el sostenimiento de ellos ni con un centavo: que desde 1925 el demandado se ha vuelto loco y se encuentra recluido desde

entonces en un sanatorio de Nueva York a consecuencia de trastornos mentales.

Al terminar esas deposiciones manifestó el abogado de la demandante que solicitaría el nombramiento de un defensor en este pleito para el demandado y presentó una certificación firmada y jurada por un médico en Nueva York el 30 de noviembre de 1926 según la cual Juan Enrique Cortada se halla recluido en un sanatorio de dicha ciudad desde julio de 1925 padeciendo de enajenación mental (*"phyclosis of a manic depressive variety"*) e incapacitado mentalmente.

Después de esas actuaciones la demandante presentó moción a la corte solicitando que nombrase un defensor que representase en este pleito al demandado, alegando con tal fin que el demandado ha sido citado y emplazado por edictos por encontrarse fuera de Puerto Rico, que su rebeldía ha sido anotada y que es un hecho positivo que consta a la demandante y que además consta de autos, según las deposiciones prestadas y la prueba documental admitida por la corte, que Juan Enrique Cortada está recluido en un manicomio en Nueva York sufriendo de enajenación mental por lo que no puede defender personalmente sus derechos. La corte resolvió esa moción dictando resolución por la cual dispuso el sobreseimiento y archivo de la demanda y que fuese registrada como sentencia, como así se hizo con los siguientes pronunciamientos: primero, que la citación y emplazamiento del demandado son defectuosos; segundo, que ni la demandante ni el demandado han residido en Puerto Rico con anterioridad a un año inmediatamente antes de hacer la demanda la demandante; tercero, que la corte no ha adquirido jurisdicción sobre el demandado; cuarto, que apareciendo de la evidencia aportada y declaraciones prestadas que el demandado es un demente, o presunto demente, su incapacidad debe ser declarada previamente y se le debe nombrar un tutor que lo represente y no un defensor judicial.

Contra esta sentencia interpuso la demandante el presente recurso de apelación.

■ Que una persona loca puede ser demandada es cuestión fuera de duda, aunque la acción sea por divorcio fundada en hechos anteriores a su locura, según ha sido declarado en los casos de *Harrigan* v. *Harrigan,* 135 Cal. 397, 67 Pac. 506; *Iago* v. *Iago,* 168 Ill. 339; *State* v. *Murphy,* 29 Nev. 149; *Rathbun* v. *Rathbun,* 40 How. Pr. 328, y *Stratford* v. *Stratford,* 92 N. C. 297, que se citan en 130 Amer. St. Rep. 851. Según se dice en Bishop "sobre matrimonio, divorcio y separación," tomo 4, pág. 230, el negar la justicia de la ley a una persona cuerda por la locura de otra equivaldría a echar sobre la primera lo que Dios impuso a la otra.

Como la demandante sometió a la corte inferior su petición de nombramiento de defensor en este pleito para el demandado por lo que resulta de los autos, de las deposiciones prestadas y de los documentos presentados, opinamos que la corte inferior estaba facultada para examinar esas actuaciones a fin de resolver dicha moción, y que nosotros también lo estamos.

■■ El artículo 165 del Código Civil dispone en su párrafo segundo que ninguna persona podrá obtener divorcio de acuerdo con dicho código que no haya residido en la isla un año inmediatamente antes de hacer la demanda, a menos que la causa en que se funde se cometiera en Puerto Rico, o mientras uno de los cónyuges residiese aquí.

Alegándose en la demanda que los esposos han tenido siempre su residencia y domicilio en esta isla, en Santa Isabel y luego en San Juan, hecho que no aparece contradicho en las deposiciones prestadas sino ratificado, pues de ellas resulta que al ausentarse temporalmente el matrimonio dejó su casa puesta en San Juan y que su residencia en Nueva York fué temporal en la casa del padre de la demandante, resulta claro que las cortes de Puerto Rico tienen

jurisdicción para conocer de esta demanda; y también porque se alega para ella causa ocurrida en esta isla mientras los cónyuges residían aquí, siendo ella la referente al hecho ocurrido en las Navidades del año 1923 al 1924. Y como la acción de divorcio es personal, aunque según el artículo 81 del Código de Enjuiciamiento Civil el pleito debe verse en el distrito en que residiere el demandado, sin embargo, pudo ser presentada la demanda en la Corte de Distrito de Ponce de acuerdo con el artículo 77 del mismo código por sumisión de la demandante, aunque no fuera éste el distrito del domicilio de su esposo sino San Juan, sin perjuicio de que el demandado solicitase el traslado a su distrito. El domicilio del demandado y de su esposa era San Juan cuando aquél se volvió loco en esta ciudad y por esto su domicilio continúa siendo ése a pesar de que desde julio de 1925 está en un sanatorio de Nueva York.

■ El demandado no podía ser citado y emplazado personalmente en esta isla por no haber sido encontrado en ella, y aunque se ejercita contra él una acción personal pudo hacerse su citación por edictos por tratarse de un caso de divorcio, según ha declarado el Tribunal Supremo de los Estados Unidos en el caso de *Pennoyer* v. *Neff*, 95 U. S. 714, que es de aplicación a este caso en este particular, pues si bien declara que en acciones personales no adquieren las cortes jurisdicción sobre personas que se encuentran fuera de su territorio si son citadas por edictos, contiene la excepción a esa regla cuando se trata del estado civil de las personas diciendo lo siguiente:

"Para evitar cualquiera errónea interpretación de los puntos de vista expuestos en esta opinión, consideramos oportuno observar que nuestras palabras no deben interpretarse en el sentido de sostener que un Estado no puede utilizar para determinar el *status* de uno de sus ciudadanos hacia una persona no residente, procedimientos que serían obligatorios dentro del Estado aunque seguidos sin ha-

berse emplazado o notificado personalmente el ausente. La juris-dicción que un Estado posee para determinar el *estatus* civil y ca-pacidades de sus habitantes, envuelve autoridad para prescribir las condiciones en que pueden iniciarse y proseguirse dentro del terri-torio de dicho Estado los procedimientos relativos al *status* civil y capacidades de sus habitantes. El estado, por ejemplo, tiene de-recho absoluto para prescribir las condiciones en que ha de basarse la relación matrimonial entre sus propios ciudadanos y las causas por las cuales puede disolverse el matrimonio. Una parte culpable de actos que bajo las leyes del Estado autorizan la disolución del vínculo matrimonial, puede trasladarse a otro Estado donde no sea posible obtener el divorcio. En este caso, la parte agraviada no podría reclamar sus derechos en el Estado adonde se trasladó la otra parte, y si no estuviese autorizado para promover la acción en los tribunales de su propio domicilio, sin emplazar ni notificar per-sonalmente a la parte ofensora, el agravio quedaría sin reparación."

Esta regla de excepción la hemos aplicado en el caso de *Orama et ál.* v. *Oyanguren,* 19 D.P.R. 831, en el que se trata-taba de una acción de filiación. El caso de *Huete* v. *Teillard,* 17 D.P.R. 52, citado por la corte inferior, no es de aplicación al presente porque en él se trataba de una acción personal en cobro de pesos.

■■ Hay dos maneras solamente en nuestras leyes de adquirir las cortes jurisdicción sobre un demandado, por su citación personal o por su citación por edictos (*constructive service*) cuando ésta es procedente, como lo es en este caso, por lo que habiendo sido citado el demandado por edictos la corte adquirió jurisdicción sobre él para los procedimientos posteriores y sólo queda después la manera en que ha de comparecer el demandado que está loco, sin que sea de apli-cación a casos como el presente el artículo 93, No. 4º., del Código de Enjuiciamiento Civil preceptivo de que la citación de una persona con residencia en esta isla que hubiere sido declarada judicialmente demente o incapacitada para atender a sus propios asuntos y se le hubiere nombrado un tutor deberá hacerse entregando a dicha persona y también a su

tutor copia de la citación, porque ese precepto se refiere a casos en que se haga la citación personalmente y no por edictos, aparte de que presupone que exista una declaración judicial previa de demencia o de incapacidad y la existencia de un tutor nombrado. Nuestro estatuto no contiene nada con respecto a la citación de un demandado loco que esté fuera de Puerto Rico y por esto su citación debe hacerse en la misma manera que la de cualquier otro demandado ausente de la isla. 32 C. J. pág. 783, párrafo 628. Como se dice en 130 Amer. St. Rept. 845, la jurisdicción sobre una persona loca puede ser obtenida ordinariamente por el mismo procedimiento (*process*) como si fuera cuerda, según los casos que en esa obra se citan, a menos que el estatuto prescriba una determinada manera de citar a un loco. En el caso de *McAllister* v. *Lancaster Co. Bank*. 15 Neb. 295, 18 N. W. 57, los autos demostraban que la locura del demandado era conocida del demandante cuando comenzó su acción, y la corte rehusó dejar sin efecto el fallo contra él, declarando que por su citación (*process*) adquirió jurisdicción y que aunque la falta de una contestación por un defensor para el apelado (*guardian*) puede hacer erróneo el fallo rendido, éste no es nulo ni anulable. Y en el caso de *Atwood* v. *Lester*, 20 R. I. 660, 40 Atl. 866, se dijo: que una persona loca puede ser demandada y adquirirse jurisdicción sobre ella por el mismo procedimiento que si fuese cuerda, está suficientemente establecido por las autoridades: 1 Freeman en Judgments, sec. 152: 1 Black on Judgments, sec. 205; *Johnson* v. *Pomeroy*, 31 Ohio St. 247; *Stidgers* v. *Brent*, 50 Md. 214, 33 Amer. Rep. 317; *King* v. *Robinson*, 33 Me. 114, 54 Am. Dec. 614. Es la política de la legislatura y de las cortes dar amplia protección a los derechos e intereses de los litigantes locos, y en ausencia de un estatuto regulando tal poder es su deber determinar el modo y manera de ejercitarlo con tal fin, teniendo autoridad con el propósito

indicado para nombrar persona que represente al loco cuando la jurisdicción para oír y resolver el asunto ha sido adquirida, ya sea residente o no y aunque tal persona no haya sido declarada loca judicialmente ni haya sido nombrado un tutor para ella, y los estatutos que dan a determinadas cortes (*probate courts*) jurisdicción sobre la persona y la propiedad de un loco no limitan los poderes de las cortes en la cual la acción ha sido presentada para nombrar un defensor (*guardian ad litem*) que represente al loco para comparecer por él. 32 C. J. págs. 772 y 773.

■ Nuestro Código Civil dispone en sus artículos 250 al 256 la manera de declarar incapacitada una persona por demencia y de nombrarle tutor, nombramiento que pueden solicitar el cónyuge, los parientes con derecho a sucederle abintestato y el fiscal cuando dichas personas sean menores de edad o carecen de personalidad para comparecer en juicio, cuando no existan esas personas o no hicieren uso de esa facultad, y cuando se trate de dementes furiosos; pero no se concede a la persona que tenga que litigar con un loco el derecho de solicitar su declaración de incapacidad y el nombramiento de un tutor; y aunque en el presente caso por ser la demandante esposa del demandado podría solicitarlo, sin embargo, la cuestión debe ser considerada para cualquier litigante y no para este caso particular. Por consiguiente, no teniendo los litigantes el derecho de solicitar tal cosa no pueden quedar obligados a que previamente sea declarada incapaz la persona con la cual han de litigar y esperar el resultado de tal declaración, que puede ser controvertida en un juicio ordinario. Por esto ha dispuesto el Código de Enjuiciamiento Civil en su artículo 56 que cuando un demente o persona incapacitada es parte en un litigio, deberá comparecer bien por medio de su tutor general o de un defensor (*guardian ad litem*) nombrado por la corte que entienda en el asunto, en cada caso, o por el juez de la

misma, y que el defensor puede ser nombrado en cualquier caso cuando la corte que conoce del asunto o el juez de la misma juzgare conveniente que sea representada por dicho defensor, aun cuando tuviera tutor general y haya comparecido por medio de éste; nombramiento que según el artículo 57, No. 3°., del mismo código puede solicitar la otra parte en la acción. Esta petición ha de ser hecha antes del juicio aunque también puede hacerse durante él si no resulta perjuicio para el demandado, por moción a la corte; pudiendo ser hecha en nombre del demandado loco dentro del tiempo concedido para comparecer y defenderse, y después de ese tiempo por el demandante. 32 C. J. pág. 773, párrafo 593.

Las citas que hace la corte inferior del artículo 230 del Código Civil en relación con el 77 de la Ley de Procedimientos Legales Especiales, así como de la Ley de 14 de marzo de 1907, enmendada en 1913, no tienen aplicación a este caso pues la primera se refiere al nombramiento de defensor para menores que tengan intereses opuestos al de su padre o madre, y la segunda al procedimiento para recluir en los manicomios a los locos peligrosos.

La corte inferior dijo algo en la opinión que escribió para fundar la sentencia apelada sobre el mérito de la causa de acción haciendo referencia a la condonación de la misma, pero como no hubo juicio en este caso y no era cuestión ésa sometida a su decisión, sino únicamente que nombrase un defensor para el loco no resolveremos esa cuestión.

En vista de lo expuesto y toda vez que la corte inferior adquirió jurisdicción sobre el demandado por su citación por edictos que ha sido llamada la atención de dicha corte al estado de locura del demandado y que ésta aparece comprobada por las dos deposiciones prestadas y por la declaración jurada del médico del sanatorio es procedente que el nombramiento de un defensor para el demandado sea hecho, y para tal fin *la sentencia apelada debe ser revocada.*