ISABEL TYRELL e ISABEL SAURÍ, demandantes y apelantes, *v.* RAFAEL SAURÍ, demandado y apelado.

Núm. 10128.—*Sometido:* Mayo 1, 1950. *Resuelto:* Mayo 26, 1950.

*Carlos E. Colón,* abogado de las apelantes.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

¿Carece de jurisdicción sobre la persona del demandado una corte de distrito en acción sobre declaración de prodigalidad en la cual se ha anotado la rebeldía del demandado y

éste no está representado por un defensor judicial, nombrado bajo las Reglas 17 (*f*) y (*g*) de las de Enjuiciamiento Civil, al celebrarse el juicio en rebeldía? Esta es la única cuestión a resolver en el presente recurso. Los hechos son los siguientes:

Isabel Tyrell como esposa e Isabel Saurí como hija de Rafael Saurí radicaron demanda contra éste solicitando se le declarara pródigo habitual a los fines legales consiguientes y específicamente, declarando al demandado incapaz para vender, ceder, enajenar, gravar, traspasar o permutar sus bienes inmuebles y muebles, dentro y fuera de Puerto Rico, y para contraer obligaciones de cualquier clase, solicitando además se nombrara a la hija demandante Isabel Saurí como tutora del demandado, ya que la esposa codemandante por su mal estado de salud no podía hacerse cargo de la administración de los bienes del demandado. Se alegó en la demanda que las demandantes son esposa e hija legítima, con carácter de única heredera forzosa del demandado la segunda, en cuya capacidad instan la acción, de acuerdo con el artículo 187 y siguientes del Código Civil, ed. de 1930; (1) que el demandado posee bienes inmuebles y muebles dentro del Distrito Judicial de Ponce; que debido a su edad y carácter de un tiempo a esta fecha en forma habitual ha venido efectuando actos de

---

(1) Estos artículos disponen:

"Artículo 187.—La declaración de prodigalidad o embriaguez habitual debe hacerse mediante demanda ordinaria tramitada por el procedimiento del juicio oral y público. La sentencia determinará los actos que quedan prohibidos al incapacitado y las facultades que haya de ejercer el tutor en su nombre.

"El tribunal adoptará provisionalmente las medidas necesarias para la seguridad de los bienes, mientras se dicte sentencia.

"Artículo 188.—Sólo pueden pedir la declaración de que habla el artículo anterior el cónyuge y los herederos forzosos del pródigo o ebrio, y por excepción el fiscal por sí o a instancia de algún pariente de aquéllos, cuando sean menores o incapacitados.

"Artículo 189.—Los actos del pródigo o ebrio anteriores a la demanda de interdicción, no podrán ser atacados por causa de prodigalidad. Los que sean posteriores a la fecha de la citación y emplazamiento del pródigo o ebrio serán rescindibles, si de ellos resultase lesión grave para los intereses que deban ser puestos bajo la tutela del pródigo."

prodigalidad con terceras personas no pertenecientes a su familia, haciendo regalos gratuitos de considerables sumas de dinero y otros actos de prodigalidad, malgastando caprichosamente sus bienes con el consiguiente perjuicio para las demandantes; que éstas razonablemente temen que el demandado continúe con sus actos de prodigalidad por lo que interesan sea declarado pródigo por sentencia firme de la corte y en su consecuencia se someta a tutela.

El demandado fué emplazado y no habiendo hecho alegación alguna a la demanda dentro del término de ley, las demandantes solicitaron se anotara su rebeldía y así lo hizo el secretario de la corte inferior. Celebrado el juicio en rebeldía sin que el demandado compareciera a la vista ni personalmente ni representado por abogado las demandantes presentaron prueba testifical y documental, quedando el caso sometido para fallo.

Al dictar sentencia declarando sin lugar la demanda, la corte inferior se expresó en esta forma:

"Entre los testigos declaró el Dr. Ramón Fernández Marina, quien, entre otras cosas, dijo lo siguiente: 'El señor Saurí, por su historial y por sus alegaciones ante el psiquiatra, vemos que está perdiendo su discernimiento de poder competentemente regir aquella parte de su personalidad, que se refiere a estos actos o instintos primitivos y esa enfermedad seguirá progresivamente haciéndole incompetente en el futuro en otros aspectos de su personalidad.'

"Además añadió:

" '¿Usted cree que es progresiva esa enfermedad, doctor?' 'Sí.'

" '¿Cree usted que una persona que padezca de esa enfermedad estaría capacitada para administrar en forma alguna. . . para administrar en forma debida sus bienes, doctor. . .?' 'No. . .'

" '¿Estaría capacitada. . .?' 'En absoluto, no está capacitada.'

"Si bien el médico, al declarar, dijo que el Sr. Saurí ha venido padeciendo por algunos años un 'proceso de estado hipomaníaco' o sea de que ha venido sufriendo una manía menor, ese estado,

de por sí, no establece que el demandado esté incapacitado mentalmente para regir su persona y bienes, pero el perito médico declaró, en las citas que dejamos hechas de su testimonio, y de modo categórico, a preguntas del abogado de las demandantes, que el demandado está incapacitado en absoluto para administrar en forma debida sus bienes, debido a la enfermedad que padece.

"En estas circunstancias, resulta evidente que el Sr. Saurí debió haber estado asistido en este procedimiento, desde su inicio por la demanda y en adelante, de un defensor judicial, a tenor con lo que preceptúa la Regla 17, apartados '*f*' y '*g*' núm. 3 de las de Procedimiento Civil.

"    .        .        .        .        .        .        .

"Expuesta así la situación de hecho y de derecho, llegamos a la conclusión de que en este caso de prodigalidad contra el demandado Rafael Saurí la Corte no ha adquirido jurisdicción sobre su persona, siendo él, como declaró el médico, una persona absolutamente incapacitada para administrar sus bienes.

"Llegando, como llegamos, a la conclusión de que carecemos de jurisdicción por no haberse seguido en este caso los trámites de ley, aunque el pleito fué sometido por sus méritos, no creemos necesario entrar en éstos, ni resolver el asunto en su fondo."

Las demandantes apelaron y en este recurso alegan que la corte inferior erró al sostener que con motivo de la declaración del perito médico Dr. Ramón Fernández Marina era necesario el nombramiento de un defensor judicial para el demandado, al declararse sin jurisdicción por dicho motivo y al desestimar de plano la demanda sin brindarle a las demandantes una oportunidad de solicitar dentro del mismo procedimiento el nombramiento de un defensor judicial para el demandado.

En cuanto al último error señalado bastará decir que las demandantes no solicitaron la reconsideración de la sentencia y la oportunidad de que, si procedía, se nombrara un defensor judicial al demandado dentro de la misma acción.

Los otros dos señalamientos envuelven la misma cuestión, la cual hemos expuesto en la pregunta con que comienza esta opinión.

Las Reglas 17(*f*) y (*g*) (3) de las de Enjuiciamiento Civil, citadas por la corte inferior en apoyo de su sentencia, declarándose sin jurisdicción sobre la persona del demandado, no son otra cosa que una adaptación de los artículos 56 y 57 del Código de Enjuiciamiento Civil, y disponen:

"Regla 17(*f*) *Menores, etc., Comparecerán por Medio de Tutor o Defensor.*—Cuando un menor, demente o persona incapacitada es parte en un litigio, deberá comparecer por medio de su padre o madre con patria potestad, si los tuviere, y en su defecto, por medio de su tutor general, o de un defensor nombrado por la corte que entienda en el asunto, en cada caso, o por el juez de la misma. El defensor puede ser nombrado en cualquier caso, cuando la corte que conoce del asunto, o el juez de la misma juzgare conveniente que el menor, demente o persona incapacitada sea representada por dicho defensor, aun cuando tuviere tutor general y haya comparecido por medio de éste.

"(*g*) *Defensor, Cómo Será Nombrado.*—Cuando se nombre defensor, el nombramiento deberá hacerse como sigue:

". . . . . . .

"(3) Cuando una persona demente o incapacitada fuere parte en una acción o procedimiento, a petición de un pariente o amigo de dicha persona demente o incapacitada, o de cualquiera otra de las partes en la acción o procedimiento."

Las disposiciones de la Regla 17(*f*) presuponen que sea parte en el litigio un menor, demente o persona incapacitada, es decir, en los casos de un demente o de una persona incapacitada que efectivamente haya sido declarado demente o incapacitado o que su condición como tal haya sido demostrada y no esté sujeta a futura declaración judicial.

En el caso de autos no se trata de un demente o de una persona incapacitada. Precisamente el fin de la acción sobre prodigalidad es determinar si el demandado está o no capacitado para administrar sus bienes y no implica, en caso de que no lo esté, una declaración de incapacidad total. Posiblemente teniendo esto en mente fué que al aprobarse el Código Civil de 1902 nuestra Asamblea Legislativa no adoptó literalmente los artículos 221, 222 y 226 del Código Civil Español equivalentes a los artículos 187, 188 y 189 del nues-

tro, supra, y eliminó expresamente el artículo 223 que en España dispone que:

"Cuando el demandado no compareciere en juicio le representará el Ministerio fiscal, y si éste fuera parte, un defensor nombrado por el Juez, sin perjuicio de lo que determine la ley de Enjuiciamiento Civil sobre los procedimientos en rebeldía."

Es de notarse además que mientras el artículo 187 de nuestro Código, supra, establece que la declaración de prodigalidad debe hacerse mediante demanda ordinaria tramitada por el procedimiento del juicio oral y público, el artículo 221 del Código Civil Español dispone que dicha declaración de prodigalidad "debe hacerse en juicio *contradictorio*" y es por esto que Manresa, comentando el artículo 223, dice que:

"Obedece este artículo, análogo en parte a otros del Proyecto de 1851, al propósito de rodear de las mayores garantías la sentencia declaratoria de prodigalidad, a fin de evitar los abusos posibles. El artículo 221 ya dice con insistencia bien significativa, que debe decidirse la declaración en 'juicio contradictorio'; y claro es que éste no tendría pleno efecto si, faltando en autos la persona del demandado, no la representase, ora el Ministerio fiscal, ora el defensor, cargo análogo al señalado en el artículo 215." 2 Manresa, Comentarios al Código Civil Español, 6ta. ed., pág. 315.

El artículo 215 a que se refiere Manresa es igual al 182 de nuestro Código y se contrae a los casos de tutela para los locos y sordomudos, cuya declaración previa como tales exige el artículo 180, y es en el procedimiento para tal declaración que el artículo 182 requiere que, cuando el fiscal es el que la solicita, la corte deberá nombrar un "defensor al presunto incapaz *que no quiera* o no pueda defenderse". (Bastardillas nuestras.)

No obstante haberse eliminado el artículo 223 de nuestro Código, se incluyó en él el 182 equivalente al 215 de España en cuanto al requisito de nombrársele un defensor al presunto incapaz (loco, demente o sordomudo). ¿Por qué se eliminó el artículo 223 de nuestro Código? No lo sabemos,

pero como dice nuestro ilustre comentarista, recientemente fallecido, Luis Muñoz Morales en su Reseña Histórica y Anotaciones al Código Civil de Puerto Rico, Libro Primero, ed. de 1947, págs. 569, 570:

"No comprendemos ni se ha explicado, por qué fué suprimido ese artículo en la revisión de 1902, cuando por otra parte quedó subsistente en nuestro art. 182 otra disposición análoga en la sección anterior respecto a la declaración de incapacidad por locura, demencia o sordomudez.

"Según aquel artículo del Código Español, a pesar de que el demandado presunto pródigo que no comparezca será procesalmente rebelde tendrá siempre dicha representación en juicio. (Vea Sánchez Román, tomo 5, vol. 2, pág. 1347; C. de Diego, tomo 2, pág. 614).

"Suprimido el citado precepto, deberá aplicarse ahora, en caso de no comparecencia del demandado, el procedimiento para anotación de rebeldía y sentencia señalado en el núm. 2 del art. 194 de nuestro Cód. de Enj. Civil (ed. 1933), practicándose toda la prueba en ausencia y sin representación alguna de dicho demandado."

■ Hemos dicho antes que posiblemente la supresión del artículo 223 en nuestro Código se debió al hecho de que la declaración de prodigalidad no conlleva, como en los casos provistos en el artículo 182, una declaración de incapacidad total. Así lo reconocen distintas sentencias del Tribunal Supremo de España y especialmente la del 25 de marzo de 1942, en la que fué ponente el Magistrado don José Castán y la cual se comenta extensamente en 26 Revista de Derecho Privado 337–342. Por considerar que dicha sentencia contiene una exposición clara y precisa del concepto de la prodigalidad, citaremos con alguna extensión del resumen que de ella se hace en 14 Repertorio de Jurisprudencia Civil 372, lo siguiente:

"Ni la tradición procedente del Derecho romano y resumida en las Partidas, ni menos aún las disposiciones del Código Civil relativas a la prodigalidad *permiten estimar que ésta represente perturbación alguna en las facultades intelectuales, ya que su-*

*pone tan sólo un desequilibrio o desorden que hace referencia únicamente al orden económico* y se reprime en consideración a los perjuicios que puede ocasionar a la familia del pródigo; reflejándose esta idea básica en diferentes notas que matizan el régimen de la prodigalidad en nuestro Derecho y se manifiesta en los arts. 222, 224, 225 y 221, apartado 2°, del Código Civil y en la sentencia de 16 de febrero de 1904; por lo que será errónea la tesis que exija al actor la demostración de que el pretendido pródigo dilapida parte de su fortuna por mera complacencia y de una manera arbitraria, caprichosa y absurda, haciendo gastos desproporcionados, estúpidos e inexplicables, hasta el punto de ser explicación y prodigalidad términos antagónicos.

"Debe aceptarse para la prodigalidad un concepto holgado, en congruencia también con el sentido usual o gramatical del vocablo, recordado en las sentencias de 17 de febrero de 1904, 19 de junio de 1915 y 30 de septiembre de 1930, y con las exigencias de una interpretación finalista que tenga en cuenta los fundamentos o motivos de la institución jurídica de que se trata; de acuerdo con todo lo cual habrá de aplicarse a los casos de conducta desarreglada de la persona que por modo habitual disipa o compromete seriamente su patrimonio, ya por la propensión a los gastos inútiles o desproporcionados a su situación económico–social o bien por administrar sus bienes con descuido y ligereza, poniendo con ello en riesgo injustificado su caudal, en perjuicio de sus familiares más íntimos, cónyuges, descendientes o ascendientes.

"El concepto amplio que debe darse a la prodigalidad permite y aconseja incluir dentro de la misma toda la gama de los desórdenes económicos y todos los modos o formas de la disipación, siempre que concurran las circunstancias que integran la noción de prodigalidad y le marcan características esenciales, a saber: *a*) que se dé una conducta desordenada y ligera—no meramente desacertada—en la gestión o en el uso del propio patrimonio, bien a causa de un espíritu desordenado o por desarreglo de costumbres; *b*) que esa conducta sea habitual, toda vez que los actos más o menos irregulares o los actos excesivos, pero aislados o puramente circunstanciales, no pueden ser calificados como constitutivos de la condición jurídica de prodigalidad; *c*) que ponga injustificadamente en peligro la conservación del patrimonio, con perjuicio de aquellas personas a las que se reserva el ejercicio de la acción, unidas al pródigo por

un vínculo estrechísimo de familia y con respecto a las cuales tiene éste obligaciones morales y jurídicas ineludibles.

".      .      .      .      .      .      .

"La declaración de prodigalidad, más que carácter sensacionalista, tiene el de una medida preservativa o preventiva del peligro o riesgo de ruina, y para apreciar debidamente ese peligro y calificar o no de derrochadora a una persona hay que considerar los actos de ella en su conjunto—y no la frecuencia o rareza que socialmente pueda revestir cada uno de los actos de la persona demandada, desconectado de los demás—para deducir de los mismos cuál sea el estado de espíritu y tendencia que revelen y la necesidad que pueda existir de atajar la inclinación al desorden y al despilfarro con la prevención protectora que la declaración de la prodigalidad implica." (Bastardillas nuestras.)

Al mismo efecto dice Clemente de Diego:

"Más que una enfermedad mental, es la prodigalidad un vicio de la voluntad, una debilidad o enfermedad moral por la que somos esclavos de nuestros caprichos y pasiones. La declaración de prodigalidad, que ha de hacerse en juicio contradictorio (221, Código civil), coloca al pródigo bajo tutela en la extensión que la sentencia determine, aunque queda reducida por su propia naturaleza a la limitación de la gestión económica, sin que ejerza influjo sobre la autoridad marital y paterna del pródigo ni atribuya al tutor facultad alguna sobre la persona del mismo. . . ." 1 Derecho Civil Español 193.

Y así, De Buen–Bonet, 1 Derecho Civil Común y Foral 56, exponen que "La tutela del pródigo recae sobre los bienes, *no sobre la persona.* Con razón ha dicho Sánchez Román (Estudios, t. II, pág. 229) que la incapacidad del pródigo es *relativa, circunstancial* y *limitada.*" (Primeras bastardillas nuestras.)

Por último, Manresa (ob. cit.) pág. 317 dice:

"La diferencia entre este caso y el del loco o demente es bien manifiesta. Aunque el derecho romano viese en el pródigo un caso de locura, era sólo en el sentido legal, o sea por lo que hace a sus consecuencias jurídicas; pero, incluso si pudiera suponerse que el pródigo es loco o está perturbado, por lo que toca al sentido económico de su vida y al uso de sus caudales, siempre

resultará ·que para las demás funciones y actos no concurre esta falta de razón, y, por tanto, la tutela nada tiene que hacer en ellos. . . . Quedan con esto derogadas las limitaciones de carácter personal que las Partidas imponían al declarado pródigo, tales como la de no poder ser testigo en testamento (ley 9a, título I, Partida 6a), ni otorgar el suyo propio (13 del mismo título y Partida), etc."

Sobre esta materia véanse: 2 Revista de Derecho Privado 340; 19 Idem 311; 26 Idem 337; Colin y Capitant, Derecho Civil, t. 2, vol. 1 (Notas sobre el Derecho Civil Español por Demófilo De Buen), págs. 380–383; 1 Castán, Derecho Civil Español, Común y Foral 154.

La misma doctrina prevalece en el derecho común. En la opinión del caso de *O'Donnell* v. *Smith*, 8 N.E. 350, 352 (Mass., 1886), siendo ponente el Juez Holmes, se dice: "En el derecho común no existe la incapacidad de los pródigos (*spendthrifts*). (Citas.) Tampoco el estatuto los equipara a los locos para crear dicha incapacidad, aparte del nombramiento de un tutor. (Citas.) . . ." Al mismo .efecto véase *Taylor* v. *Koenigstein*, 260 N.W. 544, 546 (Neb., 1935), en el que se cita del caso de *Manson* v. *Felton*, 13 Pick. (Mass.) 206 lo siguiente:

"La locura o perturbación (*distraction*), independientemente de cualquier ley, constituye una inhabilidad para contratar que surge de la falta de capacidad. En el caso de un pródigo no hay ninguna incapacidad natural o mental, y por tanto, la incapacidad a virtud del estatuto mismo, surge solamente desde el momento en que se nombra el tutor, excepto la ·precisa y limitada incapacidad de disponer de sus bienes después de haberse radicado la demanda y antes de que los procedimientos continúen, según el Estatuto 1818, cap. 60.(²) Ahora bien, la nulidad de todas las enajenaciones y transferenciás de propiedades por un loco o idiota, no surge desde el nombramiento de un tutor. . . sino de la incapacidad natural c'omo consecuencia de la falta del

---

(²) La disposición de dicho estatuto es similar a la contenida en el artículo 189, supra, de nuestro Códigó Civil.

poder mental para contratar, y esto, no por fuerza del estatuto, sino debido a bien establecidas reglas del derecho común." [3]

Por otra parte, hemos resuelto que el nombramiento de un defensor judicial es materia procesal y no de jurisdicción. *Trueba* v. *Martínez*, 33 D.P.R. 461, 474; y que el requerimiento de pago, hecho en un procedimiento ejecutivo hipotecario, a un demente que nunca había sido judicialmente declarado incapaz, "es válido y suficiente para conferir jurisdicción a la corte, y por consiguiente no vició de nulidad el procedimiento ejecutivo". *Fuentes* v. *Federal Land Bank*, 64 D.P.R. 199, 212. La regla prevaleciente en Estados Unidos es que una sentencia dictada en contra de un menor o incapacitado a quien no se ha nombrado un defensor judicial o un tutor no es nula, sino errónea. 27 Am. Jur. 842, sec. 121; 28 Am. Jur. 744, sec. 114. Véanse además los casos citados a la pág. 212 de nuestra opinión en el caso de *Subirana* v. *Cortada*, 38 D.P.R. 204.

De acuerdo con la declaración del Dr. Fernández Marina, el demandado viene padeciendo por algunos años un proceso de estado hipomaníaco cuya característica es que el individuo va perdiendo progresivamente la habilidad de controlar los impulsos primitivos, especialmente en la esfera sexual, que le obligan a actuar sin inhibiciones de ninguna índole y sin reparar en los medios para conseguir sus deseos; que el demandado está perdiendo su discernimiento de poder competentemente regir aquella parte de su personalidad que se refiere a actos o instintos primitivos y que esta enfermedad seguirá gradualmente haciéndole incompetente *en el futuro* en otros aspectos de su personalidad. Como consecuencia declaró que el demandado no estaba capacitado en absoluto para administrar en debida forma sus bienes. No obstante haber admitido la corte inferior en su sentencia que ese estado del demandado, de por sí, "no establece que. . . esté incapa-

---

[3] En igual forma el artículo 1215 del Código Civil dispone que no pueden prestar consentimiento en los contratos, entre otros, "los locos o dementes y los sordomudos que no sepan escribir". No se incluye entre los incapacitados para dar un consentimiento válido á los pródigos.

citado mentalmente para regir su persona y bienes", concluyó más adelante que la declaración del perito médico era suficiente para demostrar que el demandado sí está incapacitado para administrar en forma debida sus bienes. Es contradictoria la apreciación que hizo la corte inferior de esta prueba pues en un sitio dice que no se estableció la incapacidad y en otro afirma lo contrario, no obstante decir al final que, por la cuestión jurisdiccional que consideró aplicable, no creía necesario entrar a considerar los méritos del caso.

No deseamos expresar opinión en cuanto a si la prueba en este caso es suficiente o no para que el demandado sea declarado pródigo. Ésa es misión que compete a la corte inferior en primera instancia. Nos limitamos a resolver que no siendo ésta una acción para declarar loco o demente al demandado, no era necesario el nombramiento de un defensor judicial al demandado bajo la Regla 17 (*f*), supra, y que en su consecuencia, erró la corte inferior al declararse sin jurisdicción.

*Debe revocarse la sentencia y devolverse el caso para ulteriores procedimientos.*

El Juez Asociado Sr. Snyder no intervino.